## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13-44986-ABG |
| | ) | |
| **35TH & MORGAN DEVELOPMENT** | ) | Chapter 7 |
| **CORP.,** | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| **Debtor.** | ) | Hearing Date:  October 3, 2016 |
| | ) | Hearing Time: 10:00 a.m. |

## COVER SHEET FOR FIRST AND FINAL APPLICATION OF SEYFARTH SHAW LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD OF MAY 9, 2014 THROUGH CLOSING OF THE CASE

Name of Applicant:                                    Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                           Chapter 7 Trustee Gus A. Paloian

Date of Appointment:                              June 2, 2014, retroactive to May 9, 2014

Period for which Compensation
and Reimbursement is Sought:                May 9, 2014 through case closing

Amount of First and Final
Compensation Sought:                            $125,251.50

Amount of First and Final Expense
Reimbursement Sought:                           $ 1,943.35

Amount of Fees & Expenses Previously Paid:
                                                           $134,196.19

Amount of Holdback Fees Sought:

                                                           $14,791.55

This is an:          Interim          _X_     First and Final Application.     Prior Applications:  None

Dated:  September 12, 2016                   Respectfully submitted,

                                                           GUS A. PALOIAN, not individually or
                                                           personally, but solely in his capacity as the
                                                           Chapter 7 Trustee of Debtor's Estate

                                                           By: /s/ Bret M. Harper
                                                              Gus A. Paloian (6188186)
                                                              Bret M. Harper (6299968)
                                                              SEYFARTH SHAW LLP
                                                              131 South Dearborn Street
                                                              Suite 2400
                                                              Chicago, Illinois 60603
                                                              Telephone:  (312) 460-5000
                                                              *Counsel to Chapter 7 Trustee Gus A. Paloian*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 13-44986-ABG |
| | ) | |
| **35TH & MORGAN DEVELOPMENT** | ) | Chapter 7 |
| **CORP.,** | ) | |
| | ) | Hon. A. Benjamin Goldgar |
| **Debtor.** | ) | Hearing Date: October 3, 2016 |
| | ) | Hearing Time: 10:00 a.m. |

**FIRST AND FINAL APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES AS  COUNSEL TO
CHAPTER 7 TRUSTEE GUS A. PALOIAN FOR THE PERIOD
FROM MAY 9, 2014 THROUGH CLOSING OF THE CASE**

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 through 1330, *as amended* (the "Bankruptcy Code"), Seyfarth Shaw LLP ("Seyfarth"), as counsel to Gus A. Paloian, not individually or personally, but solely in his capacity as the duly-appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby submits its First and Final Application for Compensation and Reimbursement of Expenses (the "Application") for legal services performed, and expenses incurred, during the period from May 9, 2014 through the closing of the case (the "Application Period").  In support of this Application, Seyfarth respectfully represents, as follows:

I.  **INTRODUCTION**

1.   Seyfarth makes this Application pursuant to:  (A) Sections 105(a) and 330 of the Bankruptcy Code;  (B) Rule 2016 of the Federal Rules of Bankruptcy Procedure (singularly, a "Rule";  collectively, the "Rules");  (C) certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted by the Office of the United States Trustee (the "Guidelines");  (D) Rule

5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Court");  (E) that certain Order of the Court entered in the above-captioned case (the "Case") on November 8, 2013, authorizing Seyfarth's retention as counsel to the Trustee retroactive to May 9, 2014;  and (F) other applicable case law.

2.    Pursuant to the Court's Order, dated August 11, 2014 [Dkt. No. 154], PNC Bank, National Association (as successor in interest to National City Bank through assignment from the Federal Deposit Insurance Corporation as receiver for National City Bank) ("PNC") as agent for certain lenders ("Lenders"), and the Lenders were authorized to advance to the Estate $400,000 to be used by the Trustee in connection with administering the Estate, including, but not limited to, investigating, initiating and pursuing actions to recover property for the benefit of the creditors of the Estate (the "Advances").  Pursuant to the Advances, Seyfarth submitted invoices for its services to PNC totaling $148,987.74.  PNC paid to Seyfarth ninety percent (90%) of the fees, and one hundred percent (100%) of the expenses, for a total of $134,196.19.

3.    In making this Application, Seyfarth respectfully seeks an Order of this Court awarding:  (1) first and final allowance and payment of compensation in the amount of $125,251.50 for additional professional services rendered by Seyfarth on behalf of the Trustee during the Application Period;  (2) first and final reimbursement of actual and necessary expenses in the amount of $1,943.35 incurred by Seyfarth in rendering such professional services to the Trustee in the Case; (3) final allowance and payment in the amount of $14,791.55 representing the ten percent (10%) holdback of compensation from prior monthly fee statements submitted to PNC Bank for payment from the Advances (the "Holdback Fees"); and (4) final allowance of fees and expenses totaling $134,196.19 previously paid from the Advances.

2

## II.  JURISDICTION

4.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  Venue of this Case and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and/or (O).

## III.  BACKGROUND

5.      On November 20, 2013, creditors of the Debtor filed a Chapter 7 involuntary bankruptcy petition against the Debtor in the United States Bankruptcy Court for the Northern District of Illinois, as Case No. 13-44986 (the "Case").

6.      On April 29, 2014, the Bankruptcy Court entered an order overruling the Debtor's objections to the involuntary bankruptcy petition [Dkt. No. 120] and thereafter entered an order for relief under Chapter 7 of the Bankruptcy Code.

7.      On May 9, 2014, the Office of the U.S. Trustee appointed Gus A. Paloian as the Chapter 7 Trustee in the Case [Dkt. No. 128].

8.      On May 7 and May 19, 2014, the Debtor filed its Schedules A-G ("Schedules"), and its Statement of Financial Affairs [Dkt. Nos. 125, 129, 130].

9.      On June 2, 2014, the Court entered its Order Authorizing Chapter 7 Trustee's Application To Employ Counsel, Retroactively (the "Retention Order") [Dkt. No. 140].

10.     On May 7 and May 19, 2014, the Debtor filed its Schedules A-G ("Schedules"), and its Statement of Financial Affairs [Dkt. Nos. 125, 129, 130].

11.     The Debtor's principal asset was certain property located at 1010-1058 West 35th Street, Chicago, Illinois (the "Property").

3

12.     In accordance with Section 504(b)(1) of the Bankruptcy Code and Rule 2016,

Seyfarth has received no promises for payment for services rendered or to be rendered in any

capacity whatsoever in connection with the Case, other than specifically provided for in the

Retention Order.  Additionally, other than as permitted by Section 504(b)(1) of the Bankruptcy

Code and Rule 2016(a), no agreement or understanding exists between Seyfarth and any other

entity for a division of compensation and reimbursement received or to be received for services

rendered in or in connection with the Case.

## IV.  SUMMARY OF SERVICES RENDERED,
## AND EXPENSES INCURRED, BY SEYFARTH

### A.  Overview

13.     To date, Seyfarth's services to the Trustee and the Estate include the following:

(a) conduct initial review and analysis of the Debtor's books and records, including but not

limited to transactional documents, corporate governance records, notes and mortgages; (b)

conduct review of Debtor's schedules and statement of financial affairs; (c) conduct review and

analysis of marketing and selling the Property; (e) negotiations culminating in an agreement

with PNC as Agent to Lenders, and Lenders, to provide up to $400,000 in Advances to Trustee

in order to market and sell the Property; (g) preparation, filing and appearance in Court on

motion to allow PNC subordinated administrative expense claim; (h) preparation, filing and

appearance in Court on motion to retain Trustee's counsel; (j) preparation and filing of motion

to retain Trustee's accountant; (k) conduct analysis of the claims filed in the Debtor's

bankruptcy case; (l) conduct extensive review/resolution of claims; (m) conduct negotiations for

the sale of the Property; (l) various meetings and discussions with the U.S. Trustee and Debtor's

counsel regarding the Debtor's bankruptcy case; and (m) extensive settlement negotiations with

the Debtor.

27543450v.1

14.    This Application is the First and Final application for compensation and expense reimbursement that Seyfarth has filed in the Case.

15.    Pursuant to the Advances, PNC Bank agreed to pay ninety percent (90%) of Seyfarth's fees and one hundred percent (100%) of Seyfarth's expenses each month from the Advances, leaving a ten percent (10%) holdback to be paid at case closing.  Attached hereto as **Exhibit 1** are copies of the monthly fee statements for the period of May 9, 2014 through February 28, 2015 (the "Advances Period").

16.    During the Advances Period, Seyfarth's monthly fee and expense statements to PNC Bank totaled $148,987.74.  PNC paid to Seyfarth fees and expenses totaling $134,196.19. The Holdback Fees total $14,791.55.

17.    During the period of March 1, 2015 through the close of the case, Seyfarth has: (i) provided legal services to the Trustee in the amount of $125,251.50 (the "Fees"), and (ii) advanced costs in the amount of $1,943.35 (the "Expenses") in connection with the legal services that it has provided to the Trustee.

18.    The following table consists of a breakdown of the amount of the Fees incurred by each Seyfarth professional, including each such professional's:  (i) title, (ii) hourly rate, (iii) total hours expended in providing legal services in the Case, and (iv) the value attributable to such legal services:

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | 69.40 | $47,640.00 |
| Jay A. Gitles | Partner | $545.00 | $570.00 | 52.70 | $28,881.50 |
| James B. Sowka | Partner | $445.00 | N/A | 5.00 | $2,225.00 |

5

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Tobi Pinsky | Associate | $430.00 | N/A | 1.10 | $473.00 |
| Bret M. Harper | Associate | $330.00 | $355.00 | 32.50 | $10,872.50 |
| Christina Olson | Associate | $320.00 | $345.00 | 76.90 | $25,173.00 |
| Andrew A. Connor | Former Paralegal | $310.00 | N/A | 1.40 | $434.00 |
| Jennifer M. McManus | Paralegal | $300.00 | $315.00 | 27.50 | $8,403.00 |
| Cathy Jane | Former Paralegal | $215.00 | N/A | 5.30 | $1,139.50 |
| Julie Ziegler | Case Assistant | $100.00 | N/A | .10 | $10.00 |
| **TOTAL:** | | | | **271.90** | **$125,251.50** |

19.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

20.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

21.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

27543450v.1

## B. Time and Expense Records

22.     Seyfarth maintains written records of the time expended by its professionals. These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

23.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

24.      Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is attached hereto as **Exhibit 3** and incorporated herein by reference.

## C. Breakdown of Fees by Category of Services Rendered

25.     For the Court's convenience, Seyfarth has categorized its services to the Trustee during the Application Period into five (5) categories, as follows:  (i) Case Administration;  (ii) Claims Review and Analysis;  (iii) Investigation of Estate Claims/Adversary Proceedings/Litigation; (iv) Sale of Assets; and (v) Fee Applications.

### CASE ADMINISTRATION (9.10  HOURS VALUED AT $3,784.00)

26.      During the Application Period, Seyfarth performed 9.10 hours of services having a value of $3,784.00 on behalf of the Trustee on matters related to case administration including:

> A.     Conferences, teleconferences, and/or correspondence regarding assets and liabilities of the Estate, generally;

27543450v.1

B.      Preparing the application to retain accountant; and

C.      Preparing the application to retain special property tax accountant.

27.      A breakdown of the professionals providing services in this category is as

follows:

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | 2.50 | $1,725.50 |
| James B. Sowka | Associate | $445.00 | N/A | .30 | $133.50 |
| Bret M. Harper | Associate | $330.00 | $355.00 | .70 | $231.00 |
| Andrew A. Connor | Former Paralegal | $310.00 | N/A | 1.40 | $434.00 |
| Jennifer M. McManus | Paralegal | $300.00 | $315.00 | 4.20 | $1,260.00 |
| **TOTAL:** | | | | **9.10** | **$3,784.00** |

## CLAIMS REVIEW AND ANALYSIS (14.70 HOURS VALUED AT $7,778.50)

28.      During the Application Period, Seyfarth performed 14.70 hours of services having

a value of $7,778.50 on behalf of the Trustee on matters related to claims review and analysis

including:

A.      Conducting review and analysis of claims resolution and preparing related

spreadsheet; and

B.      Preparing claim objections, modifications and agreements to resolve

claims.

29.      A breakdown of the professionals providing services in this category is as

follows:

27543450v.1

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | 8.70 | $5,959.50 |
| Bret M. Harper | Associate | $330.00 | $355.00 | 1.30 | $429.00 |
| Jennifer M. McManus | Paralegal | $300.00 | $315.00 | 4.60 | $1,380.00 |
| Julie Ziegler | Case Assistant | $100.00 | N/A | .10 | $10.00 |
| **TOTAL:** | | | | **14.70** | **$7,778.50** |

**INVESTIGATION OF ESTATE CLAIMS/ADVERSARY PROCEEDINGS/LITIGATION
(9.00 HOURS VALUED AT $4,088.00)**

30.     During the Application Period, Seyfarth performed 9.00 hours of services having a value of $4,088.00 on behalf of the Trustee on matters related to investigation of Estate claims and adversary proceedings and litigation including:

A.      Conducting factual investigation into financial affairs of the Debtor and potential claims of the Estate;

B.      Conducting settlement discussions and conferences regarding settlement of Estate claims; and

C.      Effecting/finalizing two (2) settlements.

31.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | 2.70 | $1,871.50 |

9

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Bret M. Harper | Associate | $330.00 | $355.00 | 6.30 | $2,216.50 |
| **TOTAL:** | | | | **9.00** | **$4,088.00** |

### SALE OF ASSETS  (219.70 HOURS VALUED AT $103,248.50)

32.     During the Application Period, Seyfarth performed 219.70 hours of services having a value of $103,248.50 on behalf of the Trustee on matters related to marketing and selling the Property including:

A.     Conferences, teleconferences, and/or correspondence regarding strategizing and negotiating Property sale process;

B.     Preparation of closing documentation for sale of Property;

C.     Communications with prospective buyers regarding purchase offers, sales mechanics, post-closing follow-up and potential issues and impediments related to marketing and sale of the Property; and

D.     Effecting/finalizing sale of the Property.

33.     A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | 54.60 | $37,460.00 |
| Jay A. Gitles | Partner | $545.00 | $570.00 | 52.70 | $28,881.50 |
| James B. Sowka | Partner | $445.00 | N/A | 4.50 | $2,002.50 |

10

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Tobi Pinsky | Associate | $430.00 | N/A | 1.10 | $473.00 |
| Bret M. Harper | Associate | $330.00 | $355.00 | 24.20 | $7,996.00 |
| Christina Olson | Associate | $320.00 | $345.00 | 76.90 | $25,173.00 |
| Jennifer M. McManus | Paralegal | $300.00 | $315.00 | .40 | $123.00 |
| Cathy Jane | Former Paralegal | $215.00 | N/A | 5.30 | $1,139.50 |
| TOTAL: | | | | 219.70 | $103,248.50 |

### FEE APPLICATIONS (19.40 HOURS VALUED AT $6,352.50)

34.    During the Application Period, Seyfarth performed a total of 19.40 hours of services worth a value of $6,352.50 in connection with monthly statements and Seyfarth's final fee application.  Seyfarth spent 16.50 hours, worth a value of $5,376.50, preparing Seyfarth's first and final fee application, which represents approximately 4.3% of the total fees sought for services rendered during the Application Period.

35.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2015 HOURLY RATE | 2016 HOURLY RATE | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $685.00 | $695.00 | .90 | $623.50 |
| James B. Sowka | Associate | $445.00 | N/A | .20 | $89.00 |
| Jennifer M. McManus | Paralegal | $300.00 | $315.00 | 18.30 | $5,640.00 |
| TOTAL: | | | | 19.40 | $6,352.50 |

27543450v.1

### D.  Incurred Expenses

36.     As set forth in attached **Exhibit 3**, Seyfarth advanced $1,943.35 in Expenses on

behalf of the Estate during the Application Period.

37.     A portion of the Expenses consists of in-house photocopying charges, which

Seyfarth has voluntarily reduced to $0.10 per page.

38.     Additionally, Seyfarth advanced out-of-pocket expenses on behalf of the Estate

for online legal research conducted through Pacer, Shepard's, Law Review and Lexis services.

The charges for these expenses are *actual and at cost*.

39.     In this respect, there is no mark-up of the online legal research charges and no

profit derived by Seyfarth from them.  Seyfarth ordinarily and customarily passes its discount

on such services *through to the client*—in this instance, the Estate—billing the client only what

Seyfarth is actually charged for use of the online resources.

40.     The expenses for which Seyfarth seeks reimbursement are representative and

typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-

bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built

as "overhead" into, Seyfarth's hourly rates.

41.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for

out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use

them, in this instance the Estate, at cost.

### V.  RELIEF REQUESTED

42.     Seyfarth respectfully requests that the Court:  (i) allow and award it on a final

basis (1) the Fees, consisting of $125,251.50 for additional professional services rendered to the

Trustee, and the Expenses, in the amount of $1,943.35 incurred in relation to such services

27543450v.1

(collectively, the "Requested Fees and Expenses"); (2) the Holdback Fees, consisting of

$14,791.55, and (3) the fees and expenses totaling $134,196.19 previously paid from the

Advances; and (ii) authorize the Trustee to make payment of the Requested Fees and Expenses

and the Holdback Fees as part of the final distribution in the Case.

43.     A proposed order providing for the requested relief is attached hereto for the

Court's consideration.

## VI.  BASIS FOR THE REQUESTED RELIEF

### A.  Compensation Standards

44.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed

under Section 327 may generally apply for First and Final compensation from a bankruptcy

court.  See 11 U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the

professional person "reasonable compensation for actual, necessary services rendered[.]" 11

U.S.C. § 330(a)(1)(A).

45.     In determining the "extent and value of compensation," this Court has endorsed

and applied the "'lodestar' approach—multiplying the number of actual and necessary hours

reasonably expended by a reasonable hourly rate[.]" In re Wildman, 72 B.R. 700, 712 (Bankr.

N.D. Ill. 1987) (Schmetterer, J.); accord In re UNR Indus., Inc., 986 F.2d 207, 210-11 (7th Cir.

1993) (lodestar approach provides fair compensation under Section 330); see also City of

Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The

'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting

jurisprudence.  We have established a 'strong presumption' that the lodestar represents the

'reasonable' fee[.]").

46.     To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has

"emphasize[d] that section 330 . . . requires lawyers in bankruptcy matters to receive the same

13

compensation as they would earn in performing similar services outside the context of bankruptcy."[1] *In re* UNR Indus., Inc., 986 F.2d at 210 (emphasis added). The statutory aim is twofold: (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation." UNR Indus., Inc., *supra*; see also *In re* Farley, Inc., 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

47.     As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate." Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993); see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the court.") (quoting Steinlauf v. Continental Ill. Corp. (*In re* Continental Ill. Sec. Litig.), 962 F.2d 566, 568 (7th Cir. 1992)).

48.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate." Small, 264 F.3d at 707. Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." Moriarty v. Svec, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), cert. denied, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001); see Moriarty v. Svec, 429 F.3d 710, 718 (7th Cir. 2005) (quoting same); see also Central States, S.E. & S.W. Areas Pension Fund v. Central

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." In re UNR Indus., Inc., 986 F.2d at 208-09; see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

Cartage Co., 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting Barrow v. Falck, 977 F.2d 1100, 1106 (7th Cir. 1992)), cert. denied sub nom. Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

49.     Under this principle, "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." Gusman, 986 F.2d at 1150; accord *In re* Spanjer Bros., Inc., 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.) ("Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of reasonableness.").

50.     "Only if an attorney is unable to provide evidence of her actual billing rates should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738, 743 (7th Cir. 2003) (quoting Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999)); see also Gusman, 986 F.2d at 1151 ("the ability to identify a different average rate in the community" is an impermissible reason to depart from an attorney's billing rate).

51.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for paying clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is a strong presumption that such counsel could have billed out remaining time at the rate normally charged." *In re* Farley, Inc., 156 B.R. at 211.

52.     Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.), 157 F.3d 414, 421 (5th Cir. 1998);  In re Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are those that aid the professional's client in fulfilling its duties under the Code."  In re Ben Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

53.     Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel.  See In re Lifschultz Fast Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate.");  accord In re Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis");  In re Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same);  see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or First and Final trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code.");  JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (In re JMP-Newcor Int'l, Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming

16

bankruptcy court's award of fees to firm for advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

54.     Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re* Spanjer Bros., Inc., 191 B.R. at 748.

55.     As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

56.     Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

57.     Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

58.     For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

59.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $485.12.

17

60.     During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from: (A) $320.00 to $695.00 for attorneys, and (B) $100.00 to $315.00 for paralegals or para-professionals.

61.     In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

62.     Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case precluded such employment.

63.     In rendering legal services to the Trustee, and in making this Application, Seyfarth respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

64.     Finally, and with respect to whether Seyfarth has demonstrated skill and experience in the bankruptcy field pursuant to 11 U.S.C. § 330(a)(3)(E) (2006), Seyfarth has attached its Attorney Biographical Information as Exhibit 1.  The Attorney Biographical Information sets forth the qualifications of the Seyfarth attorneys listed herein, including their demonstrated skill and experience in the bankruptcy field, both in the local Chicago market and in representation of clients in matters nationwide.

### B.  Expense Reimbursement Standards

65.     With respect to reimbursing expenses, the Court may award a professional person "reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

27543450v.1

66.     "An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client." _In re_ Spanjer Bros., Inc., 191 B.R. at 749; see _In re_ Wildman, 72 B.R. at 731.

67.     In this connection, Seyfarth has requested reimbursement only for actual and necessary expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were incurred because they were required to accomplish the proper representation of the Trustee and the furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced and limited its costs for photocopy expenses.

68.     Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead," which the Court discussed and described, as follows:

> Expenses which are overhead are not compensable because they are not built into the normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman, 72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses incident to the operation of the firm which cannot be attributed to a particular client or cost." _In re_ Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584)[2].

69.     In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995) (Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby, J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable.");  see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost.");  see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, _such as rent, heat, and the like_, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

27543450v.1

70.     Such "user fee" expense billing closely adheres to the Seventh Circuit's market

rate billing approach.  In this respect, the Seventh Circuit's market approach to compensation

extends equally to the reimbursement of expenses, including those for online research.  See *In

re* Hunt's Health Care, Inc., 161 B.R. 971, 978 (Bankr. N.D. Ind. 1993);  accord *In re*

Hillsborough Holdings Corp., 127 F.3d at 1403-04 ("[I]f the cost of comparable services is a

relevant factor in setting compensation for services under [330](a)(1), it would logically seem

also to be a relevant factor in determining what categories to treat as reimbursable expenses

under (a)(2).").

71.     For example, in Continental Illinois Securities, supra, the Seventh Circuit

reversed, and markedly criticized, the district court for disallowing online research expenses:

> The judge refused to allow the lawyers to bill any of their out-of-pocket
> expenses of using a computerized legal research service (LEXIS).  He thought
> those expenses should be part of the lawyers' overhead.  This was another clear
> error.  If computerized research expenses were customarily treated in this fashion,
> lawyers' hourly rates would be even higher than they are, requiring an adjustment
> in the lodestar.  *But the more important point is that the market—the paying,
> arms' length market—reimburses lawyers' LEXIS and WESTLAW expenses, just
> as it reimburses their paralegal expenses, rather than requiring that these items
> be folded into overhead*.  Markets know market values better than judges do.  And
> as with paralegals, so with computerized research:  if reimbursement at market
> rates is disallowed, the effect will be to induce lawyers to substitute their own,
> more expensive time for that of the paralegal or the computer, 962 F.2d at 570
> (emphasis added);  accord Harman v. Lyphomed, Inc., 945 F.2d 969, 976 (7th Cir.
> 1991) ("The attorneys also claim that the court erred in excluding the roughly
> $10,000 expended in computer-assisted research.  The court felt that the expense
> 'is part of the amount allowed for attorney's fees.'  *We must reverse the district
> court here*.  Computer-assisted research fees—so long as reasonably incurred—in
> theory reduce the number of attorney hours otherwise needed for (presumably)
> more time-consuming manual research and are therefore compensable[. . . . as]
> expenses[.]") (emphasis added).

72.     The Seventh Circuit has remained consistent on this subject and has repeatedly

required attorney reimbursement for computerized legal research charges.  See, e.g., Uniroyal

Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 526 (7th Cir. 1995) ("Before we turn

our attention to the award of costs, we consider MTC's request that the costs of computerized

legal research be subtracted from the award. *MTC claims that these expenses are better

characterized as overhead in the same way that maintenance of a law firm library is. We reject

this claim*.") (emphasis added), cert. denied, 516 U.S. 1115, 116 S. Ct. 916, 133 L. Ed. 2d 846

(1996).

73.    Accordingly, lower courts in this District—including numerous judges of this

Court—have adhered to this controlling precedent.  See, e.g., Shula v. Lawent, 2004 U.S. Dist.

LEXIS 17662, at *7-*8 (N.D. Ill. Sept. 2, 2004) (Keys, J.) (fully allowing "computerized legal

research charges" as "costs" that were "both reasonable and necessary"); Stamm v. Provident

Life & Accident Ins. Co., 2000 U.S. Dist. LEXIS 5521, at *6 (N.D. Ill. Apr. 7, 2000) (Plunkett,

J.) ("The Seventh Circuit has held that computerized legal research is reimbursable as a

reasonable expense of litigation."); *In re* Price, 143 B.R. 190, 199 (Bankr. N.D. Ill. 1992)

(Squires, J.) (allowing full reimbursement of Lexis expense, aff'd sub nom. Price v. United

States (*In re* Price), 42 F.3d 1068 (7th Cir. 1994); *In re* Met-L-Wood Corp., 103 B.R. 972, 977

(Bankr. N.D. Ill. 1989) (Coar, J.) (allowing full reimbursement of computer research charges as

"'actual and necessary' expenses"), aff'd, 115 B.R. 133 (N.D. Ill. 1990); *In re* Prairie Cent. Ry.

Co., 87 B.R. 952, 960 (Bankr. N.D. Ill. 1988) (Squires, J.) (following earlier opinions of the

Court to allow reimbursement of Lexis  and Westlaw research charges); *In re* Wildman, 72

B.R. at 732 ("This Court adopts the view that computer research time that is both necessary and

attributable to a particular client *or* case is reimbursable under Section 330(a)(2).") (emphasis in

the original); *In re* UAL Corp., Case No. 02-48191-ERW (Wedoff, C.J.), *Order Approving

Quarterly Application Of Vedder, Price, Kaufman & Kammholz, P.C. For Allowance And

Payment Of Compensation And Reimbursement Of Expenses* (Dkt. No. 15670) (allowing full

reimbursement of $8,085.93 in online legal research charges); *In re* Eagle Food Centers, Inc., Case No. 03-15299-CAD (Doyle, J.), *Order Approving Third And Final Application Of Skadden, Arps, Slate, Meagher & Flom LLP Seeking Final Allowance And Payment Of Compensation And Reimbursement Of Expenses* (Dkt. No. 1136) (allowing full expense reimbursement of $21,888 in "Computer Legal Research" during case period) (unpublished decision); *In re* Conseco, Inc., Case No. 02-49672-CAD (Doyle, J.), *Order Approving Final Application Of Jenner & Block LLP For Allowance Of Administrative Claim For Compensation And Reimbursement Of Expenses* (Dkt. No. 6987) (allowing expense reimbursement of $139,934.07, including Westlaw and Lexis charges); *In re* Wickes, Inc., Case No. 04-02221-BWB (Black, J.), *Findings Of Fact And Conclusions Of Law In Support Of Order Awarding To DLA Piper Rudnick Gray Cary US LLP, Attorneys For Wickes, Inc., For Allowance And Payment Of First and Final Compensation And Reimbursement Of Expenses* (Dkt. No. 2935) (allowing expense reimbursement of $15,505.32, including Westlaw and Lexis charges).

74.     Finally, in seeking reimbursement for such costs, the Seventh Circuit has laid down guidelines, and cautioned, that an applicant "[is] not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover [ ] costs[, but] [r]ather [  ] [is] required to provide the best breakdown obtainable from retained records." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co., 924 F.2d 633, 643 (7th Cir. 1991).

75.     In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VIII.  NO PRIOR REQUEST

76.     No prior request for the relief requested by this Application has been made to this Court or to any other court.

22

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.    Finding Notice of the Application sufficient as given and that no other or further notice is necessary;

B.    Allowing and awarding Seyfarth on a first and final basis the Requested Fees and Expenses;

C.    Allowing and awarding Seyfarth on a final basis the Holdback Fees;

D.    Allowing and awarding Seyfarth on a final basis the fees and expenses previously paid from the Advances;

E.    Authorizing the Trustee to make payment of such Fees and Expenses to Seyfarth from funds on hand in the Estate as part of his final distribution in the case; and

F.    Granting such other and further relief as this Court deems just and appropriate.

Dated: September 12, 2016

Respectfully submitted,

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of Debtor's Estate

By:/s/ Bret M. Harper
    Gus A. Paloian (6188186)
    gpaloian@seyfarth.com
    Bret M. Harper (6299968)
    bharper@seyfarth.com
    SEYFARTH SHAW LLP
    131 South Dearborn Street, Suite 2400
    Chicago, Illinois 60603
    Telephone: (312) 460-5000
    *Counsel to Chapter 7 Trustee Gus A. Paloian*

27543450v.1